**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROBERT ALVARADO, JASON CASSAR, JESUS GUARDADO, ELIAS BONILLA, CARLOS FRANCA, VOLKAN TOLELI, TANIA SERPAS, ROMMEL GUTIERREZ, and NICOLE HUEBNER,** | No: 2:25- CV-174 |
| **Plaintiffs,** | |
| -against- | **COMPLAINT** |
| **ALL ISLAND COUNTER TOPS & MILLWORK INC., STEVEN LIDONNICI, individually, and ANDREW SPINARIS, individually,** | |
| **Defendants.** | |

Robert Alvarado ("Alvarado"), Jason Cassar ("Cassar"), Jesus Guardado ("Guardo"), Elias Bonilla ("Bonilla"), Carlos Franca ("Franca"), Volkan Toleli ("Toleli"), Tania Serpas ("Serpas"), Rommel Gutierrez ("Gutierrez"), and Nicole Huebner ("Huebner") (collectively, "Plaintiffs"), upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover overtime compensation and all applicable wages and penalties for Plaintiffs who worked at All Island Counter Tops & Millwork Inc. ("All Island Counter").

2.      All Island Counter Tops & Millwork Inc. is owned and operated by Steven Lidonnici ("Lidonnici") and Andrew Spinaris ("Spinaris").

3.      During the relevant time period, Lidonnici and Spinaris owned and operated All

1

Island Counter together.

4.      All Island Counter operates a wholesale fabricator and commercial millwork shop in Farmingdale, New York that sells, fabricates, and installs countertops and cabinetry.

5.      Defendants have failed to properly compensate Plaintiffs throughout the relevant time period.

6.      As part of a common scheme, Defendants failed to pay Plaintiffs overtime compensation at the rate of one and one half their regular rate of pay for all hours worked over forty in any given workweek.

7.      Indeed, Defendants compensated some Plaintiffs straight time for the overtime hours they worked.

8.      Defendants' policy and pattern or practice consisted of paying some Plaintiffs for 40 hours flat or less on their wage statements and paying the remaining hours Plaintiffs worked in cash at their regular rate of pay.

9.      Defendants failed to provide Plaintiffs with accurate wage statements with each payment of wages and all hours worked as required by the NYLL.

10.     Due to Defendants' failure to provide the correct number of hours worked on the wage statements provided to Plaintiffs, Plaintiffs were misinformed about the correct number of hours they worked, thus they were deprived of the information necessary for reviewing their wages and hours worked, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

11.     Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiffs' awareness that they were being underpaid.

12.     Had Plaintiffs been able to see that they were not being lawfully paid via their

statement notices, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

13.     Plaintiffs' inability to crosscheck their pay statements constitutes concrete harm.

14.     Defendants also failed to provide Plaintiffs with proper time of hire notices as required by the NYLL.

15.     Plaintiffs bring this action to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs of their lawfully earned wages.

16.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the NYLL with respect to Plaintiffs. This policy and pattern or practice includes, but is not limited to, willfully failing to pay Plaintiffs, the correct overtime wages for all hours worked in excess of 40 hours per workweek.

17.     An employer "willfully violates the FLSA when it either new or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

18.     Defendants' willful violation of the FLSA is evidenced by their knowledge that their policies violated the FLSA, and their intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements.  Here, as evidenced below, discovery will certainly reveal evidence that Defendants blatantly ignored the FLSA's explicit requirement that overtime must be at time and a half of the employee's regular rate of pay.

19.    Indeed, Defendants have been faced with similar actions for their failure to pay overtime without correcting their payment policies to be in compliance with the FLSA and NYLL. *See e.g. Amador v. All Island Counter Tops & Millwork Inc.,* No. 19 Civ. 3538 (SJB) (E.D.N.Y. June 14, 2019) ; *Sandoval v. All Island Counter Tops & Millwork Inc.,* No. 24 Civ. 5844 (E.D.N.Y. Aug. 21, 2024).

20.    Accordingly, it is clear that Defendants knew since at least June 14, 2019, that their pay policies were in violation of the FLSA and similar state statutes.

21.    Plaintiffs bring this action on behalf of themselves to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

22.    Plaintiffs Alvarado, Serpas, Cassar, Guardado, Franca, Gutierrez, and Huebner also bring claims against Defendants for retaliation in accordance with the FLSA, 29 U.S.C. § 215(a)(3) and NYLL § 215(1)(a).

23.    On October 9, 2024, Plaintiffs Alvarado, Cassar, Guardado, and Franca, Bonilla, and Toleli sent Defendants a tolling agreement and pre-litigation demand letter outlining these multiple wage and hour violations. *See* **Exhibit ("Ex.") A**, Demand Letter and Tolling Agreement.

24.    On or around October 16, 2024, Plaintiffs' counsel had a telephone conversation with Defendants' counsel, Enza Brandi Esq. ("Ms. Brandi"), regarding Plaintiffs' claims and executing the tolling agreement.

25.    Thereafter on October 30, 2024, Plaintiffs counsel informed Ms. Brandi that Serpas and Gutierrez were retained in this matter and similarly pursuing their owed wages.

26.    On November 4, 2024, Ms. Brandi was informed that Huebner was also retained as a client and similarly pursuing her owed wages with the other Plaintiffs.

27.    That same day, Plaintiffs' counsel also provided Ms. Brandi with an updated tolling agreement which included all Plaintiffs and informed her that some Plaintiffs' statute of limitations was running and therefore the tolling agreement needed to be executed soon or the case be filed. *See* **Ex. B**, Email and Updated Tolling Agreement.

28.    Despite Plaintiffs' persistence and numerous efforts to execute a tolling agreement, Plaintiffs' counsel was unable to schedule or speak with Ms. Brandi about the tolling agreement or Plaintiffs wage and hour claims. *See* **Ex. C**, Emails with Ms. Brandi.

29.    Ultimately, on November 7, 2024, Plaintiffs' counsel called Ms. Brandi and she informed Plaintiffs' counsel that she was referring the case to Forchelli Deegan Terrana LLP.

30.    On November 14, 2024, Lisa Casa Esq. ("Ms. Casa") from Forchelli Deegan Terrana informed Plaintiffs' Counsel that she was representing the Defendants and would investigate the allegations made in the demand letter and review and/or revise the tolling agreement for execution.

31.    That same day Plaintiffs' counsel sent Ms. Casa the tolling agreement for her review and revisions. *See* **Ex. D**, Email and Updated Tolling Agreement.

32.    On December 2, 2024, Plaintiffs' counsel followed up with Ms. Casa regarding the urgency of executing the tolling agreement since some Plaintiffs' statute of limitations was running. *See* **Ex. E**, Email with Ms. Casa.

33.    Ms. Casa failed to respond to Plaintiffs' counsels' email. Therefore, the following week Plaintiffs' counsel called Ms. Casa to discuss the tolling agreement and when it would be executed.

34.    Ms. Casa stated that she was working on the tolling agreement with Ms. Brandi and would send Plaintiffs the tolling agreement shortly.

35.    On December 16, 2024, Plaintiffs' counsel again followed up with Ms. Casa regarding any potential revisions to the tolling agreement. Ms. Casa failed to respond. *See* **Ex. F**, Email.

36.    In the two months following Defendants' receipt of the demand letter, they hired two additional law firms, both of whom stonewalled Plaintiffs' counsels all the while plotting their revenge against Plaintiffs for rightfully asserting unpaid wage violations.

37.    To wit, on December 19, 2024, Plaintiff Serpas informed Plaintiffs' counsel that a State Complaint was filed against Serpas, Alvarado, Cassar, Guardado, Franca, Gutierrez, and Huebner on behalf of Defendants. Coincidently, Ms. Brandi was the attorney that filed said lawsuit.

38.    In fact, on December 13, 2024, Defendants filed a frivolous State Complaint against 7 out of the 9 Plaintiffs, Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner for conversion, fraud, aiding and abetting, RICO violations, breach of fiduciary duty, unjust enrichment, violation of the faithless servant doctrine, constructive trust, and equitable accounting. *See All Island Counter Tops & Millwork Inc. v. Tania Serpas, Rommel Gutierrez, Nicole Huebner, Carlos Villafranca, Roberto Alvarado Bonilla, Jason Cassar, and Jesus Guardado*, Index No. 630985/2024, NYSCEF No. 1 (N.Y. Sup. Dec. 13, 2024) (herein "State Complaint"). *See* **Ex. G**. State Complaint.

39.    The State Complaint alleges that Plaintiff Gutierrez and Serpas created and used a fabrication and millwork company to steal material, labor and time from Defendants with the assistance of Alvarado, Cassar, Guardado, Villafranca, and Huebner since 2017.

40.    Upon information and belief, at no time prior to the filing of the State Complaint did Defendants accuse the 7 Plaintiffs of conversion, fraud, aiding and abetting, RICO violations,

breach of fiduciary duty, unjust enrichment, violation of the faithless servant doctrine, constructive trust, and equitable accounting.

41.    Moreover, upon information and belief, Defendants did not reach out to law enforcement prior to receiving Plaintiffs' demand letter due to Plaintiffs alleged misdeeds.

42.    Instead, Defendants brought the State Complaint against Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner in retaliation for seeking their owed wages and in an attempt to deter them from filing this instant lawsuit. Clearly, their tactic was not successful.

## THE PARTIES

Plaintiffs

**Robert Alvarado**

43.    Alvarado is an adult who is a resident of Suffolk county, New York.

44.    Alvarado worked for Defendants as an installer from approximately November 2017 to August 7, 2024.

45.    Alvarado is a covered employee within the meaning of the FLSA and NYLL.

46.    A written consent form for Alvarado was filed with the Complaint. ECF No. 1.

**Jason Cassar**

47.    Cassar is an adult who is a resident of Nassau county, New York.

48.    Cassar worked for Defendants as an installer for approximately 8 years from approximately the summer of 2015 to December 2023.

49.    Cassar is a covered employee within the meaning of the FLSA and NYLL.

50.    A written consent form for Cassar was filed with the Complaint. ECF No. 1.

**Jesus Guardado**

51.     Guardado is an adult who is a resident of Nassau county, New York.

52.     Guardado worked for Defendants as a polisher from approximately August 2019 to January 2024.

53.     Guardado is a covered employee within the meaning of the FLSA and NYLL.

54.     A written consent form for Guardado was filed with the Complaint. ECF No. 1.

**Elias Bonilla**

55.     Bonilla is an adult who is a resident of Nassau county, New York.

56.     Bonilla worked for Defendants as an installer from approximately 2020 to 2023.

57.     Bonilla is a covered employee within the meaning of the FLSA and NYLL.

58.     A written consent form for Bonilla was filed with the Complaint. ECF No. 1.

**Carlos Franca**

59.     Franca is an adult who is a resident of Suffolk county, New York.

60.     Franca worked for Defendants as an installer for approximately 10 years from approximately 2014 to August 7, 2024.

61.     Franca is a covered employee within the meaning of the FLSA and NYLL.

62.     A written consent form for Franca was filed with the Complaint. ECF No. 1.

**Volkan Toleli**

63.     Toleli is an adult who is a resident of Nassau county, New York.

64.     Toleli worked for Defendants as an installer for approximately December 2022 to May 2023.

65.     Toleli is a covered employee within the meaning of the FLSA and NYLL.

66.     A written consent form for Toleli was filed with the Complaint. ECF No. 1.

**Tania Serpas**

67.     Serpas is an adult who is a resident of Nassau county, New York.

68.     Serpas worked for Defendants as an office manager from approximately August 2002 to October 28, 2024.

69.     Serpas is a covered employee within the meaning of the FLSA and NYLL.

70.     A written consent form for Serpas was filed with the Complaint. ECF No. 1.

**Rommel Gutierrez**

71.     Gutierrez is an adult who is a resident of Nassau county, New York.

72.     Gutierrez began his employment with Defendants in approximately 2001. In approximately 2004 Gutierrez left his employment with Defendants and returned in 2008 until October 28, 2024.

73.     Throughout Gutierrez's employment he received several promotions. In fact from 2001 to 2004 he worked as a shop guy, in 2008 he worked as an installer, in 2015 he worked with templates, in 2016 he became a stone cutter, and lastly in 2020 he was promoted to foreman.

74.     Gutierrez is a covered employee within the meaning of the FLSA and NYLL.

75.     A written consent form for Gutierrez was filed with the Complaint. ECF No. 1.

**Nicole Huebner**

76.     Huebner is an adult who is a resident of Lexington county, South Carolina.

77.     Huebner worked for Defendants as an account manager from approximately 2013 to March 2024.

78.     Huebner is a covered employee within the meaning of the FLSA and NYLL.

79.     A written consent form for Huebner was filed with the Complaint. ECF No. 1.

**<u>Defendants</u>**

80.     Defendants jointly employed Plaintiffs at all times relevant.

81.     Defendants have substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

82.     During all relevant times, Defendants' operation is interrelated and unified.

83.     During all relevant times, All Island Counter shared common management, and was centrally controlled and/or owned by Defendants.

84.     During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiffs'.

85.     During all relevant times, Defendants have controlled the labor relations of the All Island Counter.

86.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.

**All Island Counter Tops & Millwork Inc.**

87.     All Island Counter is a domestic business corporation organized and existing under the laws of New York. It lists its principal executive office as 275 Adams Blvd., Farmingdale New York 11735.

88.     All Island Counter was and is a covered employer within the meaning of the FLSA and the NYLL.

89.     All Island Counter has maintained control, oversight, and direction over Plaintiffs, including timekeeping, payroll, and other employment practices applicable. Specifically, All Island Counter Tops & Millwork is listed as the corporate payor on Plaintiffs' pay stubs.

90.     All Island Counter applies the same employment policies, practices, and procedures to all Plaintiffs, including policies, practices, and procedures with respect to payment of wages.

91.     Upon information and belief, at all relevant times, All Island Counter has had an

annual gross volume of sales in excess of $500,000.

92.     At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Steven Lidonnici**

93.     Upon information and belief, Lidonnici is a resident of the State of New York.

94.     At all relevant times herein, Lidonnici has owned and operated All Island Counter.

95.     At all relevant times, Lidonnici has maintained a direct and significant management role at All Island Counter.

96.     At all relevant times, Lidonnici has been actively involved in managing the day-to-day operations of All Island Counter.

97.     At all relevant times, Lidonnici was at All Island Counter and its job sites on a daily basis.

98.     At all relevant times, Lidonnici informed Plaintiffs where they would be performing their installations on a daily basis.

99.     Lidonnici provided some Plaintiffs with their cash and check payments.

100.    Lidonnici also signed off on Plaintiffs' pay checks.

101.    Lidonnici makes determinations regarding the hiring and firing of employees.

102.    All Island Counter's website identifies Lidonnici as a founder of All Island Counter. *See* **Ex. H**.

103.    Additionally, in previous litigation, Lidonnici admitted to being a corporate officer of All Island Counter. *See* **Ex. I** at ¶ 24, *Amador v. All Island Counter Tops & Millwork Inc.,* No. 19 Civ. 3538 (SJB) (E.D.N.Y. June 14, 2019).

104.    At all relevant times, Lidonnici has had the power to stop any illegal pay practices

11

that harmed Plaintiffs.

105.    At all relevant times, Lidonnici has had the power to transfer the assets and/or liabilities of All Island Counter.

106.    At all relevant times, Lidonnici has had the power the declare bankruptcy on behalf of All Island Counter.

107.    At all relevant times, Lidonnici has had the power to enter into contracts on behalf of All Island Counter.

108.    At all relevant times, Lidonnici has had the power to close, shut down, and/or sell All Island Counter.

109.    Lidonnici is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiffs.

**Andrew Spinaris**

110.    Upon information and belief, Spinaris is a resident of the State of New York.

111.    At all relevant times herein, Spinaris has owned and operated the All Island Counter.

112.    At all relevant times, Spinaris has maintained a direct and significant management role at All Island Counter.

113.    At all relevant times, Spinaris has been actively involved in managing the day-to-day operations of All Island Counter.

114.    Indeed, Spinaris was at All Island Counter and its jobsites on a daily basis.

115.    Spinaris makes determinations regarding the hiring and firing of employees.

116.    In fact, Spinaris, interviewed several employees, including but not limited to Serpas, Cassar, and Franca.

117.    All Island Counter's website identifies Spinaris as a founder of All Island Counter. *See* **Ex. H.**

118.    The New York State Department of State identifies Spinaris as the CEO of All Island Counter.

119.    Additionally, in previous litigation, Spinaris admitted to being the CEO of All Island Counter. *See* **Ex. J** at ¶ 18, *Sandoval v. All Island Counter Tops & Millwork Inc.,* No. 24 Civ. 5844 (E.D.N.Y. Aug. 21, 2024).

120.    At all relevant times, Spinaris has had the power to stop any illegal pay practices that harmed Plaintiffs.

121.    At all relevant times, Spinaris has had the power to transfer the assets and/or liabilities of All Island Counter.

122.    At all relevant times, Spinaris has had the power the declare bankruptcy on behalf of All Island Counter.

123.    At all relevant times, Spinaris has had the power to enter into contracts on behalf of All Island Counter.

124.    At all relevant times, Spinaris has had the power to close, shut down, and/or sell All Island Counter.

125.    Spinaris is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiffs.

## JURISDICTION AND VENUE

126.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

127.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to

29 U.S.C. § 216(b).

128.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

129.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Roberto Alvarado**

130.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Alvarado's worked 5 days a week generally starting his work day at approximately 7:00am and ending the work day between 6:00pm and 9:00pm.

131.    Defendants did not pay Alvarado the proper overtime wages for all of the time that he suffered or was required to work each workweek

132.    At all times relevant, Alvarado was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

133.    Defendants did not keep accurate records of wages earned or of hours worked by Alvarado.

134.    Defendants failed to furnish Alvarado with a proper time of hire notice, as required by the NYLL.

135.    Defendants also failed to furnish Alvarado with an accurate statement of wages with each payment of wages as required by the NYLL.

136.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Alvarado was misinformed about the correct number of hours he worked, and

was thus deprived of the information necessary to review his wages and hours worked, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

137.   On October 9, 2024, Alvarado through counsel, sent Defendants a demand letter informing Defendants of his intent to seek his owed wages.

138.   In retaliation for sending a demand letter and inviting a pre-litigation response, Defendants filed the State Complaint.

139.   Due to the State Complaint, Alvarado has suffered damages, including emotional distress.

**Tania Serpas**

140.   Unless she missed time for vacation, sick days, or holidays, or obtained additional shifts, from August 2002 to the Summer of 2023 Serpas worked from approximately 7:00am to 4:30pm. Beginning in the summer of 2023, Serpas began working from 7:30am to 4:00pm or 4:30pm.

141.   Defendants did not pay Serpa the proper overtime wages for all of the time that she was suffered or was required to work each workweek

142.   At all times relevant, Serpas was entitled to receive time and one-half her regular rate of pay for all hours worked beyond 40 per workweek.

143.   Defendants did not keep accurate records of wages earned or of hours worked by Serpas.

144.   Defendants failed to furnish Serpas with a proper time of hire notice, as required by the NYLL.

145.   Defendants also failed to furnish Serpas with an accurate statement of wages with each payment of wages as required by the NYLL.

146.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Serpas was misinformed about the correct number of hours she worked, and thus was deprived of the information necessary for her to review her wages and hours worked, which was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

147.    On October 30, 2024, Defendants were informed of Serpas' intent to seek her owed wages.

148.    In retaliation for seeking her owed wages and inviting a pre-litigation response, Defendants filed the State Complaint.

149.    Due to the State Complaint, Serpas has suffered damages, including emotional distress.

**Jason Cassar**

150.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Cassar worked 5 days a week generally starting his work day at approximately 7:00am and ending the work day between 5:00pm and 10:00pm.

151.    Defendants did not pay Cassar the proper overtime wages for all of the time that he suffered or was required to work each workweek

152.    At all times relevant, Cassar was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

153.    Defendants did not keep accurate records of wages earned or of hours worked by Cassar.

154.    Defendants failed to furnish Cassar with a proper time of hire notice, as required by the NYLL.

155.    Defendants also failed to furnish Cassar with an accurate statement of wages with

each payment of wages as required by the NYLL.

156.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Cassar was misinformed about the correct number of hours worked, and thus he was deprived of the information necessary to review his wages and hours worked, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

157.    On October 9, 2024, Cassar through counsel, sent Defendants a demand letter informing Defendants of his intent to seek owed wages.

158.    In retaliation for sending a demand letter and inviting a pre-litigation response, Defendants filed the State Complaint.

159.    Due to the State Complaint, Cassar has suffered damages, including emotional distress.

**Elias Bonilla**

160.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Bonilla's worked 5 days a week generally starting his work day at approximately 7:00am and ending the work day between 4:00pm and 7:00pm.

161.    Defendants did not pay Bonilla the proper overtime wages for all of the time that he suffered or was required to work each workweek

162.    At all times relevant, Bonilla was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

163.    Defendants did not keep accurate records of wages earned or of hours worked by Bonilla.

164.    Defendants failed to furnish Bonilla with a proper time of hire notice, as required by the NYLL.

165.     Defendants also failed to furnish Bonilla with an accurate statement of wages with each payment of wages as required by the NYLL.

166.     Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Bonilla was misinformed about the correct number of hours worked, and thus he was deprived of the information necessary for review his wages and hours worked, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

**Jesus Guardado**

167.     Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Guardado worked 5 days a week generally starting his work day at approximately 7:00am and ending the work day between 5:00pm and 9:00pm.

168.     Defendants did not pay Guardado the proper overtime wages for all of the time that he suffered or was required to work each workweek

169.     At all times relevant, Guardado was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

170.     Defendants did not keep accurate records of wages earned or of hours worked by Guardado.

171.     Defendants failed to furnish Guardado with a proper time of hire notice, as required by the NYLL.

172.     Defendants also failed to furnish Guardado with an accurate statement of wages with each payment of wages as required by the NYLL.

173.     Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Guardado was misinformed about the correct number of hours worked, and thus he was deprived of the information necessary for review his wages and hours worked, which was

18

a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

174.    On October 9, 2024, Guardado through counsel, sent Defendants a demand letter informing Defendants of his intent to seek owed wages.

175.    In retaliation for sending a demand letter and inviting a pre-litigation response, Defendants filed the State Complaint.

176.    Due to the State Complaint, Guardado has suffered damages, including emotional distress.

**Carlos Franca**

177.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Franca worked 5 days a week generally starting his work day at approximately 6:00am or 7:00am and ending the work day between 6:00pm and 9:00pm.

178.    Defendants did not pay Franca the proper overtime wages for all of the time that he was suffered or was required to work each workweek

179.    At all times relevant, Franca was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

180.    Defendants did not keep accurate records of wages earned or of hours worked by Franca.

181.    Defendants failed to furnish Franca with a proper time of hire notice, as required by the NYLL.

182.    Defendants also failed to furnish Franca with an accurate statement of wages with each payment of wages as required by the NYLL.

183.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Franca was misinformed about the correct number of hours worked, and thus he

was deprived of the information necessary for review his wages and hours worked, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

184.    On October 9, 2024, Franca through counsel, sent Defendants a demand letter informing Defendants of his intent to seek owed wages.

185.    In retaliation for sending a demand letter and inviting a pre-litigation response, Defendants filed the State Complaint.

186.    Due to the State Complaint, Franca has suffered damages, including emotional distress.

**Volkan Toleli**

187.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Toleli worked 5 days a week generally starting his work day at approximately 7:00am and ending the work day between 4:00pm and 7:00pm.

188.    Defendants did not pay Toleli the proper overtime wages for all of the time that he was suffered or was required to work each workweek

189.    At all times relevant, Toleli was entitled to receive time and one-half his regular rate of pay for all hours worked beyond 40 per workweek.

190.    Defendants did not keep accurate records of wages earned or of hours worked by Toleli.

191.    Defendants failed to furnish Toleli with a proper time of hire notice, as required by the NYLL.

192.    Defendants also failed to furnish Toleli with an accurate statement of wages with each payment of wages as required by the NYLL.

193.    Due to Defendants' failure to provide the correct number of hours worked on the

wage statements, Toleli was misinformed about the correct number of hours worked, and thus he was deprived of the information necessary for review his wages and hours worked, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

**Rommel Gutierrez**

194.    Unless he missed time for vacation, sick days, or holidays, or obtained additional shifts, Gutierrez worked five to six days a week from August 2001 to the Summer of 2023 from approximately 7:00am to 5:00pm or 6:00pm. Beginning in the summer of 2023, Gutierrez continued to work five to six days a week from 7:00am to 3:30pm or 5:30pm.

195.    Defendants did not pay Gutierrez the proper overtime wages for all of the time that he was suffered or was required to work each workweek

196.    At all times relevant, Gutierrez was entitled to receive time and one-half her regular rate of pay for all hours worked beyond 40 per workweek.

197.    Defendants did not keep accurate records of wages earned or of hours worked by Gutierrez.

198.    Defendants failed to furnish Gutierrez with a proper time of hire notice, as required by the NYLL.

199.    Defendants also failed to furnish Gutierrez with an accurate statement of wages with each payment of wages as required by the NYLL.

200.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Gutierrez was misinformed about the correct number of hours worked, and thus he was deprived of the information necessary for review his wages and hours worked, and was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

201.    On October 30, 2024, Defendants were informed of Gutierrez's intent to seek his

owed wages.

202.    In retaliation for seeking his owed wages and inviting a pre-litigation response, Defendants filed the State Complaint.

203.    Due to the State Complaint, Gutierrez has suffered damages, including emotional distress.

**Nicole Huebner**

204.    Unless she missed time for vacation, sick days, or holidays, or obtained additional shifts, Huebner worked five to six days a week from 2013 to November 2021 from approximately 7:00am to 6:00pm. Beginning in November 2021, Huebner began working five days a week from 7:00am to 6:00pm.

205.    Defendants did not pay Huebner the proper overtime wages for all of the time that she was suffered or was required to work each workweek

206.    At all times relevant, Huebner was entitled to receive time and one-half her regular rate of pay for all hours worked beyond 40 per workweek.

207.    Defendants did not keep accurate records of wages earned or of hours worked by Huebner.

208.    Defendants failed to furnish Huebner with a proper time of hire notice, as required by the NYLL.

209.    Defendants also failed to furnish Huebner with an accurate statement of wages with each payment of wages as required by the NYLL.

210.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements, Huebner was misinformed about the correct number of hours she worked, and thus she was deprived of the information necessary for review her wages and hours worked, and

was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

211.    On November 4, 2024, Defendants were informed of Huebner's intent to seek her owed wages.

212.    In retaliation for seeking her owed wages and inviting a pre-litigation response, Defendants filed the State Complaint.

213.    Due to the State Complaint, Huebner has suffered damages, including emotional distress.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs)**

214.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

215.    At all times relevant, Plaintiffs were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiffs, within the meaning of 29 U.S.C §§ 201 et seq.

216.    At all times relevant, Defendants have been employers of Plaintiffs, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 et seq.

217.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants, and protect Plaintiffs.

218.    Defendants failed to pay Plaintiffs the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate – for all hours worked beyond 40 per workweek.

219.    Defendants' violations of the FLSA have been knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

220.     As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

<u>**SECOND CAUSE OF ACTION**</u>
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs)**

221.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

222.     At all times relevant, Plaintiffs have been employees of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

223.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs.

224.     Defendants failed to pay Plaintiffs the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate – for all hours worked beyond 40 per workweek.

225.     Thus, Defendants have violated the NYLL's overtime requirements of the NYLL.

226.     Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

<u>**THIRD CAUSE OF ACTION**</u>
**New York Labor Law – Failure to Provide Proper Time of Hire Notice**
**(Brought on behalf of Plaintiffs)**

227.     Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

228.    Defendants have failed to supply Plaintiffs with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

229.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

### FOURTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs)**

230.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

231.    Defendants failed to supply Plaintiffs with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing:  dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

232.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

### FIFTH CAUSE OF ACTION
**Fair Labor Standards Act - Retaliation**
**(Brought on behalf of Plaintiffs Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner, individually)**

233.    Plaintiffs Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner reallege and incorporate by reference all allegations in all preceding paragraphs.

234.    Plaintiffs Alvarado, Cassar, Guardado, and Franca notified Defendants of their wage and hour practices that are unlawful under the FLSA and NYLL and their intent to pursue owed wages in a demand letter sent to Defendants on October 9, 2024.

235.    Thereafter, Defendants were put on notice that Serpas, Gutierrez, and Huebner joined the other Plaintiffs to pursue their owed wages.

236.    Upon information and belief, in response to the demand letter and their intent to pursue their wage and hour claims Defendants filed a frivolous State Complaint against Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner.

237.    Defendants' actions were done in order to punish these Plaintiffs and/or to otherwise interfere with their attempt to vindicate their rights under the FLSA.

238.    Defendants' actions constitute retaliation in violation of 29 U.S.C. § 215(a)(3) and

has made these Plaintiffs suffer damages.

**SIXTH CAUSE OF ACTION**
**New York Labor Law- Retaliation**
**(Brought on behalf of Plaintiffs Alvarado, Cassar, Guardado, Villafranca, Serpas,**
**Gutierrez, and Huebner, individually)**

239.    Plaintiffs Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner reallege and incorporate by reference all allegations in all preceding paragraphs.

240.    Plaintiff Alvarado, Cassar, Guardado, and Franca notified Defendants of their wage and hour practices that are unlawful under the FLSA and NYLL and their intent to pursue owed wages in the demand letter sent to Defendants on October 9, 2024.

241.    Thereafter, Defendants were put on notice that Serpas, Gutierrez, and Huebner joined the other Plaintiffs to pursue their owed wages.

242.    Upon information and belief, in response to the demand letter and their intent to pursue their wage and hour claims Defendants filed a frivolous State Complaint against Alvarado, Cassar, Guardado, Villafranca, Serpas, Gutierrez, and Huebner.

243.    Defendants' actions were done in order to punish these Plaintiffs and/or to otherwise interfere with their attempt to vindicate their rights under the FLSA.

244.    Defendants' actions constitute retaliation in violation of NYLL § 215(1)(a) and has made these Plaintiffs suffer damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, respectfully request that this Court grant the following relief:

A.    Unpaid overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

B.    Unpaid overtime compensation and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

27

C.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper time of hire notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

D.      Statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

E.      Back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorneys' fees for Plaintiffs pursuant to 29 U.S.C. § 215(a)(3) and NYLL § 215(1)(a).

F.      Injunctive relief requiring Defendants to stop retaliating against Plaintiffs for participating in this lawsuit.

G.      Prejudgment and post-judgment interest;

H.      Reasonable attorneys' fees and costs of the action; and

I.      Such other relief as this Court shall deem just and proper.


Dated: January 10, 2025
       New York, New York

                              Respectfully submitted,

                              /s/ Brian S. Schaffer
                              Brian S. Schaffer

                              **FITAPELLI & SCHAFFER, LLP**
                              Brian S. Schaffer
                              Katherine K. Bonilla
                              28 Liberty Street, 30th Floor
                              New York, NY 10005
                              Telephone: (212) 300-0375

                              *Attorneys for Plaintiffs*

28

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra ALL ISLAND COUNTERTOP, y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 40% del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

Roberto Alvarado (Aug 21, 2024 14:19 EDT)

_____
Firma (Signature)


 Roberto Alvarado
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against ALL ISLAND COUNTERTOP and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Volkan Toleli (Sep 17, 2024 17:40 EDT)

_____
Signature


Volkan Toleli
_____
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against ALL ISLAND COUNTERTOP and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


*Jason Cassar (Sep 6, 2024 19:05 EDT)*
_____
Signature


Jason Cassar
_____
Full Legal Name (Print)

## <u>FORMULARIO DE CONSENTIMIENTO DE UNIÓN</u>

1.      Doy mi consentimiento para ser parte demandante en una demanda contra ALL ISLAND COUNTERTOP y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

Jesus Antonio Garcia Guardado (Sep 7, 2024 10:51 EDT)
_____
Firma (Signature)

 Jesus Antonio Garcia Guardado
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra ALL ISLAND COUNTERTOP y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

Rommel Gutierrez (Oct 30, 2024 11:27 EDT)

Firma (Signature)

Rommel Gutierrez

Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra ALL ISLAND COUNTERTOP y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

Elias Bonilla (Sep 18, 2024 08:49 EDT)
_____
Firma (Signature)

Elias Josue reyes Bonilla
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.      Doy mi consentimiento para ser parte demandante en una demanda contra ALL ISLAND COUNTERTOP y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.      Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

_Carlos Machado Villa Franca (Sep 16, 2024 10:21 EDT)_

_____
Firma (Signature)

Carlos Machado Villa Franca
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against ALL ISLAND COUNTERTOP and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Nicole Huebner (Nov 4, 2024 13:50 EST)

_____
Signature



Nicole Huebner
_____
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against ALL ISLAND COUNTERTOP and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


Tania Serpas (Oct 29, 2024 20:04 EDT)
_____
Signature



Tania Serpas
_____
Full Legal Name (Print)